CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 15 2017
JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Action No.:7:16cr30026 |
| ) | |
| MICHAEL JONES, et al., ) | |
| ) | |
| Defendants. ) | By: Hon. Michael F. Urbanski |
| ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on defendants' Batson challenge, ECF No. 768, in which defendants argue that the government used its peremptory challenges at trial in a discriminatory matter in violation of Batson v. Kentucky, 476 U.S. 79 (1986). Specifically, defendants claim that the government used a purposely discriminatory peremptory challenge against N.F., a black male, because of his race.

I.

In Batson, the Supreme Court held that the use of peremptory challenges to strike jurors on the basis of their race violates the Fourteenth Amendment. Id. at 89; see United States v. Martinez-Salazar, 528 U.S. 304, 315 (2000) (The Equal Protection Clause of the Fourteenth Amendment prohibits any party from "exercis[ing] a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race."). The Batson limitations "are imposed on federal prosecutors by the fifth amendment." United States v. Lane, 866 F.2d 103, 104 n.1 (4th Cir. 1989).

Batson and its progeny have developed a three-step framework for evaluating claims of impermissible discrimination in the jury selection process:

> (1) the defendant must make out a prima facie case that the peremptory challenge was based on purposeful discrimination, (2) the burden shifts to the government to produce a race neutral explanation for the peremptory challenge that is particular to the parties' case at hand, and (3) the trial court then has the duty of deciding whether the defendant has carried his burden and proved purposeful discrimination.

United States v. Barnette, 211 F.3d 803, 812 (Barnette I) (4th Cir. 2000) (citing Purkett v. Elem, 514 U.S. 765, 767–68 (1995)).

A defendant establishes a prima facie violation of a racial discrimination in the use of peremptory challenges when he shows:

> (1) "he is a member of a cognizable racial group"; (2) "that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race"; and (3) "that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."

Matthews v. Evatt, 105 F.3d 907, 917 n.7 (quoting Batson, 476 U.S. at 96), abrogated on other grounds by Miller-El v. Dretke, 545 U.S. 231 (2005). If the prosecution has offered race-neutral reasons for the peremptory challenge and the court has ruled on the ultimate question of intentional discrimination, "the preliminary issue of whether the defendant has made a prima facie showing is moot." Hernandez v. New York, 500 U.S. 352, 359 (1991).

The burden then shifts to the prosecution to provide race-neutral reasons for its peremptory challenge. The prosecution's "explanation need not be 'persuasive, or even plausible,' as long as it is neutral." United States v. Grimmond, 187 F.3d 823, 834 (4th Cir. 1998) (quoting Matthews, 105 F.3d at 917); see also Johnson v. California, 545 U.S. 162,

(2005) (finding that the analysis moves to the third step "even if the State produces only a frivolous or utterly nonsensical justification for its strike").

The Fourth Circuit has articulated myriad race-neutral reasons that satisfy <u>Batson</u>'s second prong. See, e.g., <u>United States v. Dinkins</u>, 691 F.3d 358, 380 (4th Cir. 2012) (juror's husband had been charged with assault, had two friends who had been murdered, had family who used drugs during her "whole childhood," and had four children between ages five and ten); <u>United States v. Barnette</u>, 644 F.3d 192, 215 (<u>Barnette II</u>) (4th Cir. 2011) (finding that "hesitat[ion] when asked whether she could put the government on an equal playing field with the defendant" was race neutral); <u>United States v. Farrior</u>, 535 F.3d 210, 221 (4th Cir. 2008) (juror was bail bondsman and might be sympathetic to defendants); <u>United States v. Singh</u>, 518 F.3d 236, 255 (4th Cir. 2008) (juror was "too 'anxious to serve on the panel'"); <u>United States v. McMillon</u>, 14 F.3d 948, 951 (4th Cir. 1994) (juror was the same age as defendant and had children like defendants).

Of particular import, in <u>Felkner v. Jackson</u>, the prosecution struck a black juror who "stated that from the ages of 16 to 30 years old, he was frequently stopped by the California police officers because—in his view—of his race and age." 562 U.S. 594, 595 (2011) (per curiam). The California trial court denied a <u>Batson</u> challenge, which the California Court of Appeals affirmed after "carefully review[ing] the record." <u>Id.</u> at 598. The Supreme Court determined that the California Court of Appeals' decision "was plainly <u>not</u> unreasonable." <u>Id.</u> (emphasis added) (reversing Ninth Circuit's grant of <u>Batson</u> challenge).

Similarly instructive, in <u>United States v. Campbell</u>, the prosecution exercised a peremptory challenge on the sole black venire member "because she was among a group of

3

potential jurors whom the government intended to strike because they were victims of crime and might have, therefore, been dissatisfied with the police." 980 F.2d 245, 249 (4th Cir. 1992). The defendant presented evidence that the venire member "was a well-known and vocal critic of the Roanoke City Police Department and that the government attorneys were aware of this." Id. The Fourth Circuit rejected this argument, finding that the prosecution's rationale "qualifies as . . . facially neutral." Id.; accord United States v. Jett, 18 F. App'x 224, 234 (4th Cir. 2001) (prosecution believed juror might be biased against police because juror stated police did not respond quickly to a robbery because of the neighborhood in which the crime took place).

Once the prosecution propounds a race-neutral reason for striking a juror, the district court must determine if the defendant has established purposeful discrimination. See Hernandez, 500 U.S. at 363 (citing Batson, 476 U.S. at 98). At this stage, Batson requires the court "to assess the plausibility of that reason in light of all evidence with a bearing on it." Miller-El v. Dretke, 545 U.S. 231, 252 (2005); see Hernandez, 500 U.S. at 363 ("[A]n invidious discriminatory purpose may often be inferred from the totality of relevant facts, including the fact, if it is true, that the [classification] bears more heavily on one race than another." (alterations in original) (quoting Washington v. Davis, 426 U.S. 229, 242 (1976))). Nonetheless, "[t]he ultimate burden always rests with the opponent of the challenge to prove 'purposeful discrimination.'" Grimmond, 137 F.3d at 834.

In determining whether the prosecution has engaged in purposeful discrimination, the Fourth Circuit law allows the court to consider any relevant factors, including the ultimate racial composition of the jury, United States v. Joe, 928 F.2d 99, 103 (4th Cir. 1991),

4

questions asked (or not asked) of the stricken jurors, United States v. Grandison, 885 F.2d 143, 147 (4th Cir. 1989), the race of government witnesses or victims of the crimes charged, Barnette I, 211 F.3d at 812, and whether the prosecution has engaged in a pattern of striking minority jurors, Grandison, 885 U.S. at 147.

Additionally, Miller-El requires courts to engage in comparative juror analysis, in which stricken minority jurors are compared with similarly situated white jurors:

> More powerful than these bare statistics, however, are side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve. If a prosecutor's proffered reason for striking a black panelist appears just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step.

Miller-El, 545 U.S. at 241; see also Barnette II, 644 F.3d at 205 ("[I]n Miller-El, the Supreme Court . . . [held] that proper analysis of a Batson claim requires that a court engage in comparative juror analysis . . . .").

## II.

The government used a peremptory challenge to strike N.F., a 65-year-old black male. The government contends that it struck N.F. because "his experiences with law enforcement have been such that he could not believe . . . city cops. There are a number of city cops that are involved in this [trial]."

Assuming defendants have established a prima facie case, under controlling Supreme Court and Fourth Circuit law, the court finds that the government's proffered reason is race neutral. See Felkner, 562 U.S. at 595 (bias against police); Campbell, 980 F.2d at 249 (same); Jett, 18 F. App'x at 234 (same).

5

Nor have defendants demonstrated that the government has engaged in purposeful discrimination. Instead, the court finds the government's stated concerns well-founded. N.F.'s voir dire testimony is replete with evidence that N.F. would show bias against law enforcement. When the government asked if N.F. would believe a law enforcement officer "just based on his own word of his interactions," Voir Dire. Tr. 11, N.F. responded: "No, I wouldn't go along on a police officer's word, but maybe an FBI, I'd probably proceed, but a regular city cop, it would be hard for me to do," id. at 12. Further, when the court asked N.F. if he "could provide jury service and listen to the evidence in this case and render a fair verdict," N.F. responded: "I'm just saying it probably would be hard." Id. at 4.

Despite defendants' argument to the contrary, it is of no moment that N.F. claims that he claims his bias against law enforcement arises from his race. In Felkner v. Jackson, the Supreme Court considered that very issue. In reversing the Ninth Circuit's grant of a Batson challenge, the Supreme Court determined that "[t]he prosecutor offered a race-neutral explanation for striking each juror: Juror S had stated that from the ages of 16 to 30 years old, he was frequently stopped by the California police officers because—in his view—of his race and age." 562 U.S. at 595. These are nearly the same reasons for bias that N.F. stated during voir dire. As the Supreme Court explained and the court agrees, the governments concerns are "plainly not unreasonable." Id. at 598.

Defendants also make much of N.F.'s supposed rehabilitation when he was interviewed during the voir dire. Defendants' argument is misplaced, however. The government (or a defendant, for that matter) may use a peremptory challenge to strike a

Nor have defendants demonstrated that the government has engaged in purposeful discrimination. Instead, the court finds the government's stated concerns well-founded. N.F.'s voir dire testimony is replete with evidence that N.F. would show bias against law enforcement. When the government asked if N.F. would believe a law enforcement officer "just based on his own word of his interactions," Voir Dire. Tr. 11, N.F. responded: "No, I wouldn't go along on a police officer's word, but maybe an FBI, I'd probably proceed, but a regular city cop, it would be hard for me to do," id. at 12. Further, when the court asked N.F. if he "could provide jury service and listen to the evidence in this case and render a fair verdict," N.F. responded: "I'm just saying it probably would be hard." Id. at 4.

Despite defendants' argument to the contrary, it is of no moment that N.F. claims that he claims his bias against law enforcement arises from his race. In Felkner v. Jackson, the Supreme Court considered that very issue. In reversing the Ninth Circuit's grant of a Batson challenge, the Supreme Court determined that "[t]he prosecutor offered a race-neutral explanation for striking each juror: Juror S had stated that from the ages of 16 to 30 years old, he was frequently stopped by the California police officers because—in his view—of his race and age." 562 U.S. at 595. These are nearly the same reasons for bias that N.F. stated during voir dire. As the Supreme Court explained and the court agrees, the governments concerns are "plainly not unreasonable." Id. at 598.

Defendants also make much of N.F.'s supposed rehabilitation when he was interviewed during the voir dire. Defendants' argument is misplaced, however. The government (or a defendant, for that matter) may use a peremptory challenge to strike a

juror even if the juror was otherwise previously rehabilitated during voir dire. See Briscoe v. Buckingham Corr. Center, 2001 WL 34862686, at *13 (E.D. Va. Sept. 27, 2001).

Moreover, other considerations counsel in favor of denying the Batson challenge. Unlike in Miller-El, where the prosecution exercised peremptory challenges against nearly all black venire members, the government has moved to peremptorily challenge only one black venire member out of seven total black venire persons. Cf. 545 U.S. at 241; see Grandison, 885 U.S. at 147. Additionally, blacks constitute one-third of the jury, similarly suggesting no purposeful discrimination by the government.[1] See Joe, 928 F.2d at 103.

A comparative juror analysis further bolsters this conclusion. On the one hand, the court can identify no white venire member who, during strikes for cause or peremptory challenges, expressed biases about law enforcement but nevertheless now sits on the jury. On the other hand, the court has identified numerous venire members who were stricken for cause or on peremptory challenges for the same or similar bias. For instance, D.B., a former state trooper, stated he would believe law enforcement officers over others because he believed law enforcement officers are honest. K.L. would presume FBI agents were telling the truth. Both D.B. and K.L. were stricken for cause for demonstrating biases about law enforcement.

Ultimately, it is defendants' burden to prove that the government engaged in "purposeful discrimination." Grimmond, 137 F.3d at 834. When all the evidence considered, defendants have failed to satisfy that burden. Accordingly, the Batson motion, ECF No. 768, will be **DENIED**.

---

[1] Four out of twelve jury members are black, and two out of three alternate jurors are black.

Entered: 09-15-2017

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge